USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/9/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

HELMS REALTY CORP.,

                            Plaintiff,

-against-

CITY OF NEW YORK, MAYOR'S OFFICE OF
SPECIAL ENFORCEMENT and CHRISTIAN
KLOSSNER, in his official capacity as Executive
Director of the Mayor's Office of Special
Enforcement,

                            Defendant

**ORDER AND OPINION DENYING MOTION TO DISMISS AND TO STAY**

17 Civ. 4662 (AKH)

------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Plaintiff Helms Realty Corp. ("Helms") filed this action on June 20, 2017, challenging the constitutionality of Section 121 of New York's Multiple Dwelling Law ("MDL"),[1] passed into law on October 21, 2016 and colloquially referred to as the "Airbnb Law." Section 121 prohibits advertising the use of a class A multiple dwelling for non-permanent residence purposes. The Complaint alleges that this provision is unconstitutionally vague, facially and as applied to Plaintiff, in violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

    Defendants now move to dismiss the Complaint or in the alternative to stay the proceedings pending the conclusion of state court proceedings. For the reasons stated below, I deny the motions.

---

[1] The Complaint makes identical allegations against N.Y.C. Admin Code § 27-287.1, which contains the same language as § 121 of MDL. For convenience, I refer throughout this opinion to the provisions of MDL.

1

## STATUTORY FRAMEWORK

Two statutory provisions form the basis of the instant suit. Because of their importance to understanding the Complaint, I begin with describing them.

The first provision is §4(8) of the New York Multiple Dwelling Law ("MDL"). This provision defines the term "class A" dwelling, and prohibits *using* class A dwellings for non-permanent residence purposes. § 4(8)(a) defines a "class A" dwelling as follows:

> A "class A" multiple dwelling is a multiple dwelling that is occupied for permanent residence purposes. This class shall include tenements, flat houses, maisonette apartments, apartment houses, apartment hotels . . . and all other multiple dwellings except class B multiple dwellings. A class A multiple dwelling shall only be used for permanent residence purposes. For the purposes of this definition, "permanent residence purposes" shall consist of occupancy of a dwelling unit by the same natural person or family for thirty consecutive days or more . . . .

Put simply, § 4(8) prohibits using a class A dwelling for non-permanent residence purposes. Furthermore, a "class B" dwelling, as contrasted with "class A" dwelling, is defined as follows:

> A "class B" multiple dwelling is a multiple dwelling which is occupied, as a rule transiently, as the more or less temporary abode of individuals or families who are lodged with or without meals. This class shall include hotels, lodging houses, rooming houses, boarding houses, boarding schools, furnished room houses, lodgings, club houses, college and school dormitories and dwellings designed as private dwellings but occupied by one or two families with five or more transient boarders, roomers or lodgers in one household.

§ 4(9). That is, whereas a class A building *cannot* be used for transient occupancy, a class B building can be.

The second relevant provision is § 121 of the New York MDL. This provision prohibits *advertising* class A dwellings for illegal uses, where such uses are illegal under § 4(8). § 121(1) incorporates by reference § 4(8) and states as follows:

> It shall be unlawful to advertise occupancy or use of dwelling units in a class A multiple dwelling for occupancy that would violate subdivision eight of section four of this chapter defining a "class A" multiple dwelling as a multiple dwelling that is occupied for permanent residence purposes.

That is, § 121(1) prohibits advertising class A dwellings for non-permanent residence occupancy.

Finally, § 121 also defines the term "advertise," as the term is used in § 121(1). § 121(3) defines term "advertise" to mean as follows:

2

> For the purposes of this section, the term "advertise" shall mean any form of communication for marketing that is used to encourage, persuade or manipulate viewers, readers or listeners into contracting for goods and/or services as may be viewed through various media including, but not limited to, newspapers, magazines, flyers, handbills, television commercials, radio, signage, direct mail, websites or text messages.

That is, the term "advertise" refers to communications intended to encourage persons into contracting for goods or services.

## COMPLAINT

### *Plaintiff*

Plaintiff Helms owns and operates The Broadway Hotel and Hostel (the "Hotel"), located at 230 West 101st Street in New York City, a hotel with 126 rooms and which has been in use as a hotel for the last 75 years. *See* First Amended Complaint ("Complaint"), Dkt. No. 34 at ¶ 3.[2] The Hotel uses its 126 rooms for transient occupancy, or occupancy of less than 30 days, and advertises room vacancies on online websites.

A short history of the hotel is useful. Before 1938, it was not legally required for buildings to have certificates of occupancies, or CO's, which describe what is and is not appropriate use of a building. ¶ 20. Prior to 1938, and in lieu of CO's, the Department of Buildings maintained what were called "I-Cards," which contained information relevant to the proper use and categorization of buildings. The Hotel's I-Cards designate the 126 rooms as class "B" single room occupancy units. ¶ 22. In 1942, the Department of Buildings issued a CO to the Hotel for the first time, and the CO permitted the Hotel to use its rooms for transient occupancy. The CO however did not designate the Hotel as a class "A" or "B" building, but instead as "Old Law Tenement, Single Room Occupancy." The parties dispute the implications of the I-Cards and CO to the current categorization of the Hotel as class A or class B.

---

[2] At this stage of the proceedings, I accept well-pleaded facts as true and construe the complaint in a light most favorable to the nonmoving party. *See Patane v. Clark*, 503 F.3d 106, 111 (2d Cir. 2007).

3

## *Defendants*

Defendants, the City of New York and its associated enforcement entities, oppose the Hotel's use for transient occupancy. According to Defendants, it is illegal under New York State and City law for Helms to *use* its rooms for transient occupancy or to *advertise* use for transient occupancy. Defendants have attempted to sanction Helms for both of these illegal activities, *i.e.*, illegal use and illegal advertising.

First, regarding illegal use, Defendants issued Plaintiff citations on December 30, 2014, under N.Y.C. Administrative Code § 28-210.3, for illegally using the Hotel for transient occupancy. § 28-210.1 makes it "unlawful for any person or entity who owns or occupies a . . . dwelling unit classified for permanent residence purposes to use or occupy . . . such multiple dwelling or dwelling unit for other than permanent residence purposes." The City contended in issuing its citation that Plaintiff's Hotel was a class A multiple dwelling and that its use for transient occupancy therefore violated § 4(8).

A hearing officer, however, dismissed these violations. Examining the history of the Hotel's occupancy and the language of the CO, the hearing officer found that the Hotel was *not* a class A dwelling and therefore did not violate § 4(8). The City appealed and, on February 2, 2017, the Environmental Control Board ("ECB"), the administrative body hearing the appeal, denied the appeal and upheld the hearing officer's dismissal. ¶ 26. *See New York City v. Helms Realty Corp.*, ECB Appeal No. 1601223 (Feb. 2, 2017) ("ECB Decision") (Annexed as Exhibit D to the Declaration of Emily K. Stitelman, Dkt. No. 38, Ex. D).

The City nevertheless persisted. Following the ECB decision, between February 10 and April 12 of 2017, the City issued Plaintiff 27 additional violations under N.Y.C. Administrative

4

Code § 28-287.1 and MDL § 121, this time for unlawful *advertising* of the use of transient occupancy in a class A building. ¶¶ 27–28. These violations form the basis of the instant action.

*The Instant Action*

The instant action, filed on June 20, 2017, alleges that the law under which the advertising violations were issued *i.e.*, § 121, is unconstitutional, facially and as applied to Plaintiff (Count I). In particular, Plaintiff alleges that the term "class A" dwelling and the term "advertise" are vague and fail to provide a reasonable person with notice of what conduct is proscribed. Plaintiff also alleges that § 121 is unconstitutional as applied to Plaintiff since Plaintiff *has* the legal right (as confirmed by the ECB decision) to use the Broadway Hotel for transient occupancy. According to Plaintiff, it cannot have violated § 121's prohibition on advertising illegal uses where it was already determined that Plaintiff's underlying use was *not* illegal under § 4(8).

In addition to its claims pursuant to the U.S. Constitution, the Complaint also (a) alleges violations of Article I, §8 of the New York State Constitution (Count II),[3] (b) seeks a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that the Airbnb law is invalid and unconstitutional (Count III), (c) seeks damages under 42 U.S.C. § 1983 (Count IV) and, finally, (d) seeks attorneys' fees under 42 U.S.C. § 1988 (Count V). These Counts rise and fall with the success of Count I.

There are three state court proceedings relevant to this case. The first case, filed on April 28, 2017, is *Terrilee 97th Street LLC, v. City of New York, et al.*, Index No. 652306/2017 (Sup. Ct. N.Y. Co.) *See* Dkt. No. 38, Ex. A. This action, brought by Helms and others against the

---

[3] The parties agree that identical standards apply to the claims under the U.S. Constitution and the claims under the New York State Constitution.

State and City of New York, alleges that § 4(8) and other provisions are unconstitutional, facially and as applied.

The second case, filed on June 28, 2017, is *City v. Freid. et al.*, Index No. 451883/2017 (Sup. Ct. N.Y. Co.). *See* Dkt. No. 38, Ex. C. This action, brought by the City against Helms and others, alleges violations of § 4(8) for using the Hotel for transient occupancy.

The third case, filed on July 11, 2017, is *Helms Realty Com. v. City of New York, et al.*, Index No. 156224/2017 (Sup. Ct. N.Y. Co.). *See* Dkt. No. 38, Ex. B. This action, brought by Helms against the City, requests a declaration that the ECB decision is binding precedent on all City agencies.

## DISCUSSION

### 1. Legal Standards for a Vagueness Challenge

"The Due Process Clause of the Fourteenth Amendment requires that laws be crafted with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and to 'provide explicit standards for those who apply them.'" *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "Thus, all vagueness challenges—whether facial or as-applied—require us to answer two separate questions: whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006).

"These standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, Inc., 455 U.S. 489, 498 (1982). However, if a law "threatens to inhibit the exercise of constitutionally protected rights . . . . [like] the right of free speech or of association, a more stringent vagueness test should apply." *Id.* at 499.

### 2. Facial Vagueness Challenge

Helms first challenges § 121 on its face, arguing that it lacks sufficient specificity and that it "will have a substantial chilling effect" on constitutionally protected speech. *Farrell*, 449 F.3d at 497. I hold, however, that § 121 is not vague on its face, and I therefore dismiss the facial challenges.

#### a. Standards for Facial Vagueness Challenges

"Courts have looked with disfavor on facial vagueness challenges to statutes that do not implicate fundamental rights." *Farrell*, 449 F.3d at 495. "Panel opinions of this Court have repeatedly held that when . . . the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied,' i.e., 'in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'" *United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) (en banc) (quoting *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993)).

Therefore, "[f]acial vagueness challenges may go forward only if the challenged regulation 'reaches a substantial amount of constitutionally protected conduct.'" *Farrell*, 449 F.3d at 496 (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983)). "In determining whether a regulation reaches substantial protected conduct, [the court] must consider everything that falls within the ambiguous scope" of the statute or regulation. *Id.* at 497.

Whether Helms can mount a facial challenge to § 121 depends, therefore, on whether it reaches constitutionally protected speech, which in turn requires a Court to examine the (ambiguous and unambiguous) scope of the statute. The analysis collapses into the question of whether § 121 is sufficiently clear and whether it covers constitutionally protected speech.

### b. The Facial Vagueness Challenge to § 121

§ 121 makes it unlawful to "advertise" certain uses of class A multiple dwellings where such uses are deemed illegal by a second provision *i.e.*, § 4(a). Helms argues that two terms of this regulatory scheme are facially vague: (1) the term "advertise," as it is used in § 121(1) and defined in § 121(3); and (2) the term "class A" as it is used in § 121(1) and defined in § 4(8).

I find nothing vague about these terms. First, the term "advertise" is sufficiently clear. *See Vill. of Hoffman Estates*, 455 U.S. at 502 (holding that the term "marketed for use" is not vague). It is a word "of common usage that ha[s] plain and ordinary meaning[]," *United States v. Gagliardi*, 506 F.3d 140, 147 (2d Cir. 2007), and the Multiple Dwelling Law defines "advertise" to mean (understandably) "any form of communication for marketing that is used to encourage, persuade or manipulate viewers, readers or listeners into contracting for goods and/or services as may be viewed through various media." *See* § 121(3). Helms' contention that § 121 would prohibit, for example, an article in a travel magazine detailing the writer's experience in a hotel lacks merit. The purpose of such a writing it to describe an experience. The purpose of the

8

advertising that § 121 bans is to encourage readers into contracting for goods or services with the writer or with an entity the writer represents.

Second, the definition of "class A" found in § 4(8) is also sufficiently clear. That provision defines "class A" as a dwelling for "permanent residence purposes," and then further defines "permanent residence purposes" as occupancy by the same natural person or family for thirty consecutive days. There is nothing ambiguous about this definition.

In short, the terms "advertise" and "class A" are sufficiently clear, and the resulting statutory scheme is similarly clear. Read together, § 121(1) and § 121(3) prohibit the advertising of occupancy that would violate the provisions of § 4(8), where § 4(8) defines "class A." It cannot be said that this statutory scheme fails "to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or that "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732.

Furthermore, given the clear scope of § 121, it is also clear that § 121 does not reach any constitutionally protected speech. § 121 prohibits the advertisement of *illegal* conduct, *i.e.*, the use of class A dwellings for uses prohibited by § 4(8). "The government may ban forms of communication more likely to deceive the public than to inform it, or commercial speech related to illegal activity." *Central. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563–64 (1980) (internal citations omitted). "In commercial speech cases [] a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more

extensive than is necessary to serve that interest." *Central Hudson*, 447 U.S. at 566 (1980). § 121 is by definition about speech concerning illegal activity, and such speech is not constitutionally protected. A facial challenge to § 121 therefore fails on the first step of the four-part analysis articulated in *Central Hudson*.

Finally, Helms argues that § 121 is facially vague, not that it is facially overbroad. "Overbreadth and vagueness are different doctrines. A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Farrell*, 449 F.3d at 498–99 (internal quotations marks and citations omitted) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972)). An overbreadth challenge fails as well. § 121 is clear in that it prohibits *only* speech concerning illegal activity, which is not constitutionally protected.

### 3. As Applied Vagueness and First-Amendment Challenge

Helms also mounts an as-applied vagueness challenge and an as-applied First Amendment challenge to §121, arguing that enforcement of § 121 *against Helms* violates the First and Fourteenth Amendments. To state an as-applied vagueness challenge, Helms must show that the law failed to give it adequate notice that the conduct it engaged in was illegal. *See Farrell*, 449 F.3d at 484. To state an as-applied First Amendment challenge, Helms must show that the (commercial) speech it engaged in was protected under the four-part test articulated in *Central Hudson*.

At the heart of Helms' as-applied challenges is the fact that the City's ECB February 2 decision found that Helms did *not* violate § 4(8). Helms argues, relying on the ECB decision, that the City could not have found that Helms violated § 121 (*i.e.*, illegal advertising), since Helms was already found *not* to have violated § 4(8) (*i.e.*, the underlying illegal use). As Helms

portrays it, the City is attempting to have a second shot at preventing Helms from operating its hotel after the City lost its first shot in litigating the § 4(8) violation.

The as-applied challenge is best understood not as a vagueness challenge (the statute is not in fact vague, as described above), but as a First Amendment challenge, the argument being that the City cannot restrict Helms' speech where Helms' speech does not concern illegal activity. Put differently, the challenge is that it is nonsensical for Helms to have been found to have violated § 121 since, by its own terms, §121 only restricts advertising uses that are illegal under § 4(8), and the City found Helms not to be engaging in illegal uses under § 4(8).

Defendants do not challenge the sufficiency of the as-applied challenges. Instead, Defendants move the court to abstain from adjudicating these challenges in light of state court proceedings. According to Defendants, whether in fact Helms violated § 4(8) is a question pending before the state courts *not* resolved by the ECB February 2 Decision. Helms disputes this. I discuss the issue below.

### 4. Abstention under *Younger*

Defendants move to stay or dismiss the instant action pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), arguing that the issue of whether Plaintiff violates § 4(8) is the subject of three state court proceedings. *See supra*.[4] Helms argues in response that the ECB February 2 decision conclusively decided that issue in favor of Helms and precludes further litigation under *res judicata*.

---

[4] The New York Appellate Division, in a decision issued two days after the ECB February 2 decision, *Terrilee, 97th St. LLC v. New York City Envtl. Control Bd.*, 146 A.D.3d 716, 716 (1st Dep't 2017), prohibited certain buildings like Helms' from using its rooms for transient occupancy. According to Defendants, "it is likely that the ECB's decision in Helms would have been different had the ECB had the benefit of reviewing the First Department's decision." *See* Motion at 11 n.13.

11

The question is whether *Younger* mandates abstention. The *Younger* abstention doctrine is a limited exception to the general rule that, if the court has cognizance of a case or controversy properly before it, it has a "virtually unflagging obligation" to decide the case, even if similar litigation exists in state courts. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Defendants' argument stretches *Younger* and the line of cases following it beyond their limits.

### a. Legal Standards for *Younger* Abstention

"*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013). In *Younger*, the plaintiff sought federal-court adjudication of the constitutionality of a state statute, and requested an injunction against the statute's enforcement in a state proceeding where the plaintiff was a criminal defendant. The Court held that federal courts "should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43–44 (1971). The Supreme Court "has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions." *Sprint*, 571 U.S. at 72. For example, in *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), a state brought a civil action under a nuisance statue against a theater showing obscene films. The theater was ordered to close, and subsequently sought and received a declaration that the statute was unconstitutional and an injunction against the execution of the state-court judgment. The Supreme Court vacated the lower court decision and held that *Younger* abstention was appropriate in deference to the state's "efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards

12

which are embodied in its criminal laws." *Huffman*, 420 U.S. at 605. *Younger* abstention was also found appropriate in a third instance, where the state proceeding implicated a state's interest in enforcing the orders and judgments of its courts. *See Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987) (requirement for the posting of bond pending appeal).

Thus, the *Younger* abstention doctrine, as recently clarified by the Supreme Court in *Sprint*, applies "only in three 'exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint*, 571 U.S. at 77).

Where such exceptional circumstances exist, a court should then go on to consider the three conditions identified in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). The three *Middlesex* factors are whether "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003).

b. **Application**

In the case at hand, *Younger* abstention is inapplicable to any of the three state court actions.

The first state court action, *Terrilee 97th Street LLC, v. City of New York, et al.*, Index No. 652306/2017 (Sup. Ct. N.Y. Co.), filed before the instant federal action, was initiated by *Helms* and alleges that § 4(8) is unconstitutional. This action is neither a criminal prosecution

nor a state civil proceedings akin to a criminal prosecution, and it does not implicate a state's interest in enforcing the orders and judgments of its courts. Similarly, the third state court action, *Helms Realty Com. v. City of New York, et al.*, Index No. 156224/2017 (Sup. Ct. N.Y. Co.), was also initiated by Helms. It was filed on July 11, 2017[5] and seeks a declaration that the ECB decision is binding precedent on all City agencies. This action too is neither a criminal prosecution nor a state civil proceedings akin to a criminal prosecution, and does not therefore justify *Younger* abstention.

The complaint in the second state court action, *City v. Freid. et al.*, Index No. 451883/2017 (Sup. Ct. N.Y. Co.), was filed on June 28, 2017 against three hotels (including that of Plaintiff Helms) for allegedly using, operating, and advertising buildings for transient occupancy and for maintaining a building containing various fire safety and other violations under the New York City Building Code and Fire Code. The complaint raises issues beyond the 27 notices of violations that Helms received for illegally advertising transient occupancy.

The complaint contains ten causes of action to enjoin a "public nuisance." *See* N.Y. Admin. Code § 7-706(a).[6] "Public nuisance" includes a range of administrative violations alleged in seven of the ten causes of action, *see* § 7-703(d), (k), (l), *e.g.*, illegal conversion of dwelling units from permanent residences, § 28-210.3 (Count I); making changes inconsistent

---

[5] "*Younger* abstention is required . . . only when state court proceedings are initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (citing *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)). Here, although the second and third actions were filed *after* the federal action, that fact alone does not preclude *Younger* since these actions were nonetheless filed before any proceedings of substance on the merits had taken place in federal court. *See Donohue v. Mangano*, 886 F. Supp. 2d 126, 142 (E.D.N.Y. 2012).

[6] "Upon the direction of the mayor, or at the request of the head of a department or agency of the city, or at the request of a district attorney of any county within the city, or at the request of a member of the city council with respect to the public nuisances defined in subdivisions (a), (g), and (h) of section 7-703, or upon his or her own initiative, the corporation counsel may bring and maintain a civil proceeding in the name of the city in the supreme court to permanently enjoin a public nuisance within the scope of this subchapter, and the person or persons conducting, maintaining or permitting the public nuisance from further conducting, maintaining or permitting the public nuisance." N.Y. Admin. Code § 7-706(a).

with existing certificate of occupancy, § 28-118.3.2 (Count II); building without a permit, § 28-105.1 (Count III); violation of the zoning resolution, Zoning Resolution § 32-14 (Count IV); failing to maintain a building in code compliance, § 28-301.1 (Count V); creating conditions endangering the safety of considerable others, Penal Law § 240.45(1) (Count VI); illegal change of occupancy, § 28-118.3.1 (Count VIII). The complaint also alleges deceptive trade practices, Consumer Protection Law § 20-700 (Count IX), and common law public nuisance (Count X).

The allegations of Count VII come closest to the issues of this case that "defendants have advertised, permitted, maintained and used, continue to advertise, permit, maintain, and use dwelling units at the Five Subject Buildings for transient occupancies of less than thirty days, in violation of the Multiple Dwelling Law." ¶ 137.

The mere existence of parallel and related federal and state actions does not *itself* justify abstention. Since Plaintiff does not in the federal action seek to enjoin or otherwise supervise the state courts, the limited *Younger* abstention is inapplicable.[7]

## CONCLUSION

For the reasons stated, Defendants' motion is denied. The Clerk shall terminate the motion (Dkt. No. 37). Oral argument scheduled for August 16, 2018 is cancelled. Defendants shall answer the Complaint by September 7, 2018. The parties shall appear for their initial case management conference on September 21, 2018, at 10:00 A.M.

SO ORDERED.

Dated: August 8 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

---

[7] Defendants have not argued that abstention is appropriate under the doctrine first articulated in *Railroad Comm'n of Texas v. Pullman Co.* Under this doctrine, abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976) (citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941)). I decline to consider what the parties have not raised.