USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/10/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
HELMS REALTY CORP.,                                             :
:    **ORDER AND OPINION**
                  Plaintiff,                    :    **GRANTING DEFENDANTS'**
:    **MOTION FOR SUMMARY**
      -against-                                            :    **JUDGMENT**
:
CITY OF NEW YORK, MAYOR'S OFFICE OF                             :    17 Civ. 4662 (AKH)
SPECIAL ENFORCEMENT and CHRISTIAN                               :
KLOSSNER, in his official capacity as Executive                 :
Director of the Mayor's Office of Special                       :
Enforcement,                                                    :
:
                  Defendants.                   :
:
-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Helms Realty Corp. ("Helms") brings an as-applied First Amendment challenge to the City of New York's (the "City") enforcement of section 121 of New York's Multiple Dwelling Law ("MDL"),[1] colloquially referred to as the "Airbnb Law." Plaintiff argues that it may not be prohibited from advertising its use of rooms in The Broadway Hotel & Hostel (the "Hotel") for transient occupancy because, as a City administrative review board has already held, such use is lawful. Defendants—the City, the Mayor's Office of Special Enforcement ("OSE"), and OSE Executive Director Christian Klossner—argue that the review board's determination is not binding on them, that transient occupancy of the property is illegal, and that it is therefore constitutional to prohibit advertising the illegal use. Both sides move for summary judgment. For the reasons discussed below, Defendants' motion is granted, and Plaintiff's motion is denied.

---

[1] N.Y.C. Admin Code § 27-287.1 contains the same language as § 121 of MDL. For convenience, I refer throughout this opinion to the provisions of MDL.

1

## BACKGROUND

**1. Statutory Framework**

I begin by reciting this Court's description of the two key statutory provisions at issue in its August 9, 2018 Order and Opinion (ECF No. 49). The first provision is § 4(8) of the New York Multiple Dwelling Law ("MDL"), last amended in 2010 and effective May 1, 2011. This provision defines the term "class A" dwelling, and prohibits *using* class A dwellings for non-permanent residence, or transient, purposes. § 4(8)(a) defines a "class A" dwelling as follows:

> A "class A" multiple dwelling is a multiple dwelling that is occupied for permanent residence purposes. This class shall include tenements, flat houses, maisonette apartments, apartment houses, apartment hotels . . . and all other multiple dwellings except class B multiple dwellings. A class A multiple dwelling shall only be used for permanent residence purposes. For the purposes of this definition, "permanent residence purposes" shall consist of occupancy of a dwelling unit by the same natural person or family for thirty consecutive days or more . . . .

Put simply, § 4(8) prohibits using a class A dwelling for transient purposes. Furthermore, a "class B" dwelling, as contrasted with a "class A" dwelling, is defined as follows:

> A "class B" multiple dwelling is a multiple dwelling which is occupied, as a rule transiently, as the more or less temporary abode of individuals or families who are lodged with or without meals. This class shall include hotels, lodging houses, rooming houses, boarding houses, boarding schools, furnished room houses, lodgings, club houses, college and school dormitories and dwellings designed as private dwellings but occupied by one or two families with five or more transient boarders, roomers or lodgers in one household.

§ 4(9). "When a class A multiple dwelling is used wholly or in part for single room occupancy, it remains a class A multiple dwelling." MDL § 4(16).[2] Thus, whereas a class A building *cannot* be used for transient occupancy, a class B building can be so used.

The second relevant provision is § 121 of the MDL, effective October 21, 2016. This provision prohibits *advertising* class A dwellings for illegal uses, where such uses are illegal under § 4(8). § 121(1) incorporates by reference § 4(8) and states as follows:

> It shall be unlawful to advertise occupancy or use of dwelling units in a class A multiple dwelling for occupancy that would violate subdivision eight of section four of this chapter defining a "class A" multiple dwelling as a multiple dwelling that is occupied for permanent residence purposes.

That is, § 121(1) prohibits advertising class A dwellings for transient occupancy.

Finally, § 121 also defines the term "advertise," as the term is used in § 121(1). § 121(3) defines term "advertise" to mean as follows:

> For the purposes of this section, the term "advertise" shall mean any form of communication for marketing that is used to encourage, persuade or manipulate viewers, readers or listeners into contracting for goods and/or services as may be viewed through various media including, but not limited to, newspapers, magazines, flyers, handbills, television commercials, radio, signage, direct mail, websites or text messages.

That is, the term "advertise" refers to communications intended to encourage persons into contracting for goods or services.

---

[2] MDL § 4(16) defines "single room occupancy" as "the occupancy by one or two persons of a single room, or of two or more rooms which are joined together, separated from all other rooms within an apartment in a multiple dwelling, so that the occupant or occupants thereof reside separately and independently of the other occupant or occupants of the same apartment."

3

## 2. The Hotel

The Hotel is a tenement apartment building located at 230 West 101st Street, on the Upper West Side of Manhattan, with a first-floor apartment and 126 single room occupancy ("SRO") units on the second through seventh floors. Freid Aff., ECF No. 64, ¶ 2. The Hotel's Certificate of Occupancy ("CO")—the operative document for determining its class and permitted uses, issued by the Department of Buildings—describes the Hotel as follows:

> Old Law Tenement
> Single Room Occupancy

Stitelman Decl. Ex. H, ECF No. 59-3. The CO makes no mention of class A or class B status. The Hotel's use of at least a portion of its units for transient occupancy goes back several decades. Freid Aff. ¶ 4.

## 3. Related Proceedings

### a. The 2017 Helms ECB Appeal

Defendants issued Plaintiff citations on December 30, 2014 for illegally using the property for transient occupancy. Rosenberg Aff. Ex. 5, ECF No. 65-1. On October 11, 2016, a hearing officer in the City's Office of Administrative Trials and Hearings ("OATH") held that the term "Old Law Tenement" in the Hotel's CO signified class A use, but only for the Hotel's first-floor apartment, and that the term "Single Room Occupancy" applies to the other 126 units, and signifies (and authorizes) class B transient use. Rosenberg Aff. Ex. 7, ECF No. 65-3, at 5. On February 2, 2017 the Environmental Control Board ("ECB"), a part of OATH that hears appeals from the decisions of administrative judges, upheld the hearing officer's decision. Rosenberg Aff. Ex. 10, ECF No. 65-8, at 6-7 (the "2017 Helms ECB Appeal"). In upholding the decision, the ECB held that MDL § 4(16), which provides that "a class A multiple dwelling . . .

used wholly or in part for single room occupancy . . . remains a class A multiple dwelling," was inapplicable, since the Hotel—despite the existence of a class A apartment within it—was not a class A multiple dwelling. The summonses that had been issued by OSE to Plaintiff were dismissed. *Id.* at 7. The City did not take any subsequent steps to challenge the dismissal of the summonses.

### b. The *Terrilee* Decision and the Overruling of the 2017 Helms ECB Appeal

On January 31, 2017, two days before the 2017 Helms ECB Appeal decision was issued, the Appellate Division, First Department, held that none of the units in a tenement class A single room occupancy ("SRO") building could be used for transient occupancy, even if such use had been lawful prior to the 2010 amendments to the MDL. *See Terrilee 97th St. LLC v. New York City Envtl. Control Bd.*, 146 A.D.3d 716. On February 21, 2019, in a matter involving the same owner, the ECB relied on *Terrilee* in holding that "once a building is classified as a Class 'A' building, the amended MDL provisions of 2010, effective in 2011, apply." Stitelman Decl. Ex. J, ECF No. 59-5, at 3. The ECB treated the entire building as a class A dwelling, despite the fact that some of its rooms historically had been used as SROs for transient occupancy.[3] The ECB stated that its decision in the 2017 Helms ECB Appeal—allowing historical class B SRO use in the Hotel to continue, despite its status as a tenement containing a class A apartment—was overruled:

> [H]istorical legal Class "B" SRO use in a tenement or any Class "A" multiple dwelling, even if formerly authorized by DOB records, could no longer legally continue after the 2010 amendments [to the MDL]. To the extent that the appeal

---

[3] The building's CO describes it as an "Old Law Tenement Class 'A' Mult. Dwelling & S.R.O.," and an earlier CO used language identical to the Hotel's CO: "Old Law Tenement Single Room Occupancy." Stitelman Decl. Ex. K, ECF No. 59-6, at 1, 3.

5

>   decision[] in . . . *Helms Realty Corp.*, 1601233, found otherwise,
>   [that] decision[] [is] overruled.

*Id.* at 4.


#### c. This Lawsuit

In February and April 2017, Defendants issued Plaintiff new citations, this time for *advertising* the use of the property for transient occupancy. Rosenberg Aff. Ex. 13, ECF No. 65-11. Plaintiff filed this action on June 20, 2017 and filed its First Amended Complaint on November 13, 2017. On August 9, 2018, I ruled on Defendants' motion to dismiss or stay, (i) dismissing Plaintiff's facial vagueness challenge, (ii) interpreting Plaintiff's as-applied vagueness challenge as a First Amendment challenge,[4] and (iii) holding that parallel state court proceedings implicating § 4(8) did not mandate abstention under *Younger v. Harris*, 401 U.S. 37 (1971). The parties subsequently engaged in limited discovery, followed by the filing of the instant motions for summary judgment on June 10, 2019.


### DISCUSSION

### 1. Standard of Review

Summary judgment may be granted if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[4] In addition to its claims pursuant to the U.S. Constitution, the Complaint also alleges violations of Article I, §8 of the New York State Constitution. The parties agree that identical standards apply to the claims under the U.S. Constitution and the claims under the New York State Constitution.

6

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, a Court must "view the evidence in the light most favorable to the party opposing summary judgment, . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004).

"On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Rueda v. City of New York,* 2017 WL 4221081, at *4 (S.D.N.Y. Sept. 21, 2017) (quoting *Anderson,* 477 U.S. at 256). "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

### 2. Issue Preclusion

For collateral estoppel, or issue preclusion, to apply, "[i]t is required that an issue in the present proceeding be identical to that necessarily decided in a prior proceeding, and that in the prior proceeding the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue." *Allied Chem., an Operating Unit of Allied Corp. v. Niagara Mohawk Power Corp.,* 72 N.Y.2d 271, 276 (1988). "Among the specific factors to be considered are the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 501 (1984).

Collateral estoppel can apply to determinations of administrative agencies if the agency proceeding was "quasi-judicial." *Allied Chem.*, 72 N.Y.2d at 276.

Application of collateral estoppel may be inappropriate where "[t]he issue is one of law and . . . a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." Restatement (Second) of Judgments § 28(2)(b) (1982); *see also* Siegel, N.Y. Prac. § 467 (6th ed.) ("An intervening change in the law, such as to suggest a different result under the rule now applicable than that reached under the prior rule, is . . . a ground on which to deny an estoppel."). Comment *c* to § 28(2) of the Second Restatement explains:

> [T]he choice must be made in terms of the importance of stability in the legal relationships between the immediate parties, the actual likelihood that there are similarly situated persons who are subject to application of the rule in question, and the consequences to the latter if they are subject to different legal treatment. In this connection it can be particularly significant that one of the parties is a government agency responsible for continuing administration of a body of law that affects members of the public generally . . . .

Illustration 3 to comment *c* provides a pertinent example:

> A, a state agency, brings an action against B to revoke B's wholesale liquor license on the ground that B has violated the law governing the license by selling only to himself as a retailer. The court grants B's motion to dismiss for failure to state a claim, holding that the conduct charged does not violate the law. In a subsequent action by A against C, a higher court holds that identical conduct by C is ground for the revocation of C's wholesale liquor license. In a second action against B for revocation of B's license, A is not precluded from asserting that since the first dismissal, B has continued, as before, to sell only to himself as a retailer.

The New York Court of Appeals cited comment *c* with approval in holding that res judicata, or claim preclusion, did not bar a second operating certificate revocation proceeding against a nursing home based on the same industry-related felony convictions, since "the statutory rights

8

of the parties were altered between the first and second proceedings." *Hodes v. Axelrod*, 70 N.Y.2d 364, 373 (1987). In its holding, the Court emphasized "the public importance of the issues involved" in light of the legislature's intervening amendment of the law to provide for automatic forfeiture of operating certificates for industry-related felonies. *Id.*

Plaintiff invokes the observation of the Appellate Division, Third Department in *Meyer v. Droms* that "it is settled that a change of *decisional* law following a prior action does not disturb the binding effect of the prior action." 68 A.D.2d 942, 943 (1979) (emphasis added) (citing *Gowan v. Tully*, 45 N.Y.2d 32, 36 (1978); *Slater v. American Min. Spirits Co.*, 33 N.Y.2d 443, 447 (1974)). However, *Gowan* and *Slater*, the Court of Appeals cases relied on by *Meyer* for this "settled" principle, are claim preclusion cases, not issue preclusion cases. To the extent those cases remain good law following *Hodes*' application of the Second Restatement's change-in-law exception to claim preclusion, they create a distinction in New York law between changes in statutory law and changes in decisional law only in the context of *claim* preclusion. Even if New York law recognizes such a distinction in the claim preclusion context, there is no basis for recognizing such a distinction in the *issue* preclusion context, and to do so would run contrary to the weight of authority. *See, e.g.*, 18 Fed. Prac. & Proc. Juris. § 4425 (3d ed.) (observing that, just as changes of statutory law may defeat issue preclusion, "[t]he same is true for changes of ... *decisional* law") (emphasis added); *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697-98 (2019) (citing comment *c* and holding that an exception to issue preclusion was justified where an intervening U.S. Supreme Court decision repudiated the reasoning of an earlier decision of the Court).

Here, *Terrilee* changed the applicable legal context concerning the application of the MDL to tenements and class A multiple dwellings with a history of SRO use. This change of

9

decisional law was significant and directly relevant to the issue on which Plaintiff seeks issue preclusion, as reflected by the ECB's recent overruling of its earlier holding in the 2017 Helms ECB Appeal *on the exact question at issue in this lawsuit*. Additionally, the City's ability to regulate building owners' advertising of unlawful room rentals is an issue of public importance, having generated substantial legislative attention over the past decade. Preventing the City, in perpetuity, from enforcing key provisions of the MDL against Plaintiff would give Plaintiff an exemption from advertising restrictions not enjoyed by similarly situated building owners, resulting in inequitable administration of the laws. These considerations weigh strongly against applying issue preclusion.

Plaintiff argues that any change in the applicable legal context was not an *intervening* change, since *Terrilee* was decided two days prior to the 2017 Helms ECB Appeal. "[W]hether to apply collateral estoppel in a particular case," however, "depends upon 'general notions of fairness involving a practical inquiry into the realities of the litigation.'" *Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 (2003) (quoting *Halyalkar v. Bd. of Regents of State of N.Y.*, 72 N.Y.2d 261, 268 (1988)); *see also People v. Roselle*, 84 N.Y.2d 350, 357 (1994) ("[C]ollateral estoppel, a flexible doctrine, should not be mechanically applied just because some of its formal prerequisites . . . may be present."). The *Terrilee* decision was unavailable to Defendants as they briefed the 2017 Helms ECB Appeal, and the ECB appears to have been entirely unaware of *Terrilee* at the time of its decision. Fairness requires that *Terrilee* be treated, for issue preclusion purposes, as though it was decided concurrently with, or subsequent to, the 2017 Helms ECB Appeal.

10

Accordingly, I hold that issue preclusion does not apply to bar Defendants from rearguing in this lawsuit the issue decided in the 2017 Helms ECB Appeal: whether the MDL permits use of the Hotel for transient occupancy.

### 3. Classification and Permitted Use of the Hotel

Turning to the merits of Plaintiff's claim, and considering the legality of its use of the Hotel *de novo*, I hold that no disputed issue of fact exists to preclude granting summary judgment to Defendants. The property, by the express terms of its CO, is an "old-law tenement" under the MDL,[5] and therefore a class A multiple dwelling under MDL § 4(8)(a).[6] Under the same provision of the MDL, class A multiple dwellings may not be used for transient occupancy. After *Terrilee*, which held that the 2010 amendments to the MDL "extinguished" the pre-existing rights of a class A multiple dwelling to use *any* of its rooms for transient occupancy, 146 A.D.3d

---

[5] MDL § 4(11) provides:

> A "tenement" is any building or structure or any portion thereof, erected before April eighteenth, nineteen hundred twenty-nine, which is occupied, wholly or in part, as the residence of three families or more living independently of each other and doing their cooking upon the premises, and includes apartment houses, flat houses and all other houses so erected and occupied, except that a tenement shall not be deemed to include any converted dwelling. An "old-law tenement" is a tenement existing before April twelfth, nineteen hundred one, and recorded as such in the [relevant regulatory] department before April eighteenth, nineteen hundred twenty-nine, except that it shall not be deemed to include any converted dwelling.

The Hotel is not a "converted dwelling." *See* MDL § 4(10) (defining a "converted dwelling," in relevant part, as "a dwelling (a) erected before April eighteenth, nineteen hundred twenty-nine, to be occupied by one or two families living independently of each other and subsequently occupied as a multiple dwelling").

[6] The status of the Hotel—even of its first-floor apartment alone—as an old-law tenement is sufficient to make it a class A dwelling. Contrary to what the ECB held, it does not matter that the Hotel contains dozens of SROs, even class B SROs. "When a class A multiple dwelling is used wholly or in part for single room occupancy, it remains a class A multiple dwelling." MDL § 4(16).

11

at 716, any disputed facts regarding the historical use of the Hotel for transient occupancy are not material to Plaintiff's claims. Thus, I hold that use of any of the rooms of the property for transient occupancy is unlawful under the MDL.

### 4. First Amendment

The above holdings make the First Amendment analysis straightforward. Because use of the Hotel for transient occupancy is illegal, the First Amendment does not protect Plaintiff's advertisement of such use. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980) (holding that if commercial speech "is neither misleading *nor related to unlawful activity*, the government's power is more circumscribed," and intermediate scrutiny applies to the regulation of such speech) (emphasis added); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech . . . that proposes an illegal transaction[.]") (citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973)). Thus, summary judgment is granted to Defendants on Plaintiff's free speech claims.

## CONCLUSION

For the reasons stated, Defendants' motion for summary judgment (ECF No. 57) is granted, and Plaintiff's motion for partial summary judgment (ECF No. 61) is denied. The oral argument scheduled for November 21, 2019 is canceled. The Clerk shall terminate the open motions, enter judgment for Defendants, and mark the case closed.

SO ORDERED.

Dated: September 10, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge